SDB
Paper No. 12

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

In re Pedro Ruiz-Tagle Decombe

———

Serial No. 592,586

———

Beveridge, DeGrandi & Weilacher for applicant.

Julie B. Seyler, Trademark Examining Attorney, Law Office 2
(John C. Demos, Managing Attorney).

———

Before Sams, Rooney and Simms, Members.

Opinion by Rooney, Member:

An application was filed by Pedro Ruiz-Tagle Decombe to
register the mark shown below for fresh fruits. Use since
February 2, 1986 was alleged.



Registration was finally refused under Section 2(d) in view
of the existence of a registration for the mark CAPRICE for

Serial No. 592,586

biscuits, cookies, wafers and candy.[1]  The Examining Attorney believes that the similarity in the marks and the close relationship of the goods support a finding of likelihood of confusion.

This case is similar in some ways to the case of In re Mars, Incorporated decided in 1984 by the Court of Appeals for the Federal Circuit (222 USPQ 938).  There the court reversed the Board's finding and held that there was no likelihood of confusion between the mark CANYON used for fresh citrus fruits and the same mark CANYON for candy bars.  The court noted in that case that, in the absence of evidence on the issue of likelihood of confusion, the decision-making process involves mere opinion and that, in its opinion, confusion was not likely.

The difference in this case is that the Examining Attorney has provided evidence in the form of copies of Lexis/Nexis printouts assertedly showing that applicant's and registrant's products are complementary insofar as they are often served and eaten together; and that there is a trend among food distributors to enter the packaged fresh produce market.  In support of her position, the Examining Attorney also cited In re Martin's Famous Pastry Shoppe, Inc.,___F.2d___, 223 USPQ 1289 (Fed. Cir. 1984) finding MARTIN'S for wheat bran and honey bread confusingly

---

[1] Registration No. 1,392,539 issued May 6, 1986 claiming first use in March 1979 and reciting ownership of Greek Registration No. 84719/84 issued May 30, 1983.

2

similar to MARTIN'S for cheese, and Midwest Biscuit Company v. John Livacich Produce, Inc., 203 USPQ 628 (TTAB 1979) refusing registration of VISTA for fresh strawberries, avocados and vegetables in view of the same mark registered for cookies and crackers.

Applicant refutes the evidence saying that fresh produce is not sold in stores or advertised by brand name; that those who might see a trademark on the packaging therefor would not be likely to be confused; that the Lexis/Nexis article from the New York Times, November 12, 1986, cited by the Examining Attorney, merely indicates what some large, well-known companies expect to be doing in the future; and that the article also supports applicant's position in saying that "most fresh produce comes to stores from farms through regional wholesalers who make little or no effort to promote a brand name or support it with advertising" and "... the nation's produce sections are teeming with fresh fruits and vegetables of uncertain lineage".  Applicant also noted that registrant, during the prosecution of its application, successfully refuted the citation of the mark CAPRICE DES DEUX on a background crest, for cheese, by arguing that the Examining Attorney had dissected the cited mark in determining the question of likelihood of confusion and noting that the marks and goods of registrant and applicant therein were different.  It is

applicant's position that the Examining Attorney in this case also has dissected its mark and that registrant's goods are more related to cheese than they are to fresh fruits.

The marks in this case are almost identical. All that there is which might render them less than identical is a design feature in applicant's mark, which it characterizes as a "distinctive 'V' design", and the stylized script. We note that registrant's mark is printed in simple block-letter form. With such a presentation, registrant is free to use its mark in any type of print or script. As to the presence of the "V" design, the test for likelihood of confusion is not whether the marks would cause confusion when viewed on a side-by-side basis, in which case, the viewing public would have an opportunity to compare the marks more carefully and possibly note the presence in one of a design feature which does not appear in the other. Instead, in all likelihood, one mark would be viewed at one time and place and the other at a subsequent time and/or place. Under these circumstances, it is the verbal portion of the mark which would be remembered. Simple designs such as shown in applicant's mark would not usually be remembered, especially when one is confronted by essentially the same word mark. See In re Solar Energy Corporation, 217 USPQ 743 (TTAB 1983) and Cooper Industries, Inc v. Repcoparts U.S.A., Inc. 218 USPQ 81 (TTAB 1983).

4

Applicant argues that in refusing registration, the Examining Attorney has dissected the marks and failed to consider the marks in their entireties. We do not believe that to be so. Rather, the Examining Attorney has considered that the word portion of the mark is the more significant and afforded it the proper weight in deciding the question of likelihood of confusion. This clearly is a legitimate way to analyze the issue and we agree with the Examining Attorney that little weight should be afforded a relatively nondistinctive design in the face of two otherwise identical word marks. See Giant Food, Inc. v. Nation's Food Service, Inc., 710 F.2d 1565, 218 USPQ 390 (Fed. Cir. 1983).

Accordingly, we find that, if used on similar or related goods, these marks would be likely to confuse.

Turning to the goods, applicant concedes that goods of different types are sold in the same stores but notes that there is no per se rule with respect to food products and the marks used thereon.

In support of its position, applicant asks that the Board take judicial notice that almost all fruits are displayed in stores without trademarks on them. With regard to that request, the Board is limited as to the subject matter of which it may take judicial notice and this particular subject matter does not fall within those limits.[2] Apart therefrom, saying that "almost" all

_____

[2] The Board takes judicial notice of definitions in dictionaries of the English language and in generally recognized technical trade dictionaries. See Marcal Paper Mills, Inc. v. American Can Co., 212 USPQ 852 (TTAB 1981).

5

fruits are sold without a trademark affixed thereto does little for applicant's position. As applicant has noted, a number of fruits are sold with the marks attached thereto. For instance, such well known trademarks as CHIQUITA, SUNKIST and DOLE are quite visible in the fresh produce departments of stores on bananas, oranges and pineapple, respectively. There is no reason why other fruits and vegetables might not be so marked. Furthermore, as also noted by applicant, fruits and vegetables are frequently shipped in boxes or cartons with a mark applied to the outside of them.

Applicant discounts the possibility of confusion of store employees who might see these marked cartons, saying that it cannot be imagined that such persons would assume that fresh produce and cookies or crackers would have come from the same source. Applicant not only qualifies this conclusion by assuming that the stockpersons are not high school students working after school or on weekends, but offers no reason why stockpersons, high school students or otherwise, could not be confused. Applicant also discounts the likelihood of confusion of purchasing agents and distributors of food products indicating that these people are knowledgeable and sophisticated in the field. As the Examining Attorney has countered, being knowledgeable and/or sophisticated in a particular field does not necessarily endow one with knowledge and sophistication in connection with the use of trademarks. See In re Pellerin Milnor Corporation, 221 USPQ

558 (TTAB 1983). Nor does it guarantee knowledge of the range of products of the parties with whom one is dealing. In addition to the foregoing categories of persons who encounter the marks on the boxes or cartons of fresh produce, there is also the trucker or other transporter of produce who would be exposed to the marks in this manner. With regard to the foregoing, it is noted that likelihood of confusion is not limited to purchasers of the goods in question but may occur at any stage of the distribution process. See In re Optica International, 196 USPQ 775 (TTAB 1977) and In re Arctic Electronics Co., Ltd., 220 USPQ 836 (TTAB 1983).

As to the purchasers, while they may or may not see the cartons, boxes or baskets in which produce is shipped, we have noted that at least some fresh produce is clearly individually marked with trademarks. In addition, the Examining Attorney has submitted a copy of an article taken from The New York Times, November 12, 1986, entitled "Bumper Crop of Brand Names" stating, in part, as follows:

> Some of the largest food companies-Campbell Soup, Kraft, Pillsbury, Dole, Del Monte and others-are seeking to enter or expand their presence in the fresh produce business with a host of new brand names...
> . . .
>
> The frontier is no longer sparsely settled. Campbell already sells its own brand of fresh mushrooms and is working on tomatoes and lettuce. Del Monte is expanding its brand name tropical fruit business. And Kraft, Pillsbury and Dole are all test-marketing packaged pre-cut vegetables...
> . . .

7

The Examining Attorney also urges that we take into account the "overlapping corporate nexus" between major food companies. Included in the Examining Attorney's submission are excerpts of articles from Business Wire, February 3, 1986, referring to Del Monte Fresh Fruit Co. as an operating division of Nabisco Brands Inc.; PR Newswire, February 10, 1987, referring to strong financial results for 1986 for the cookie, cracker, nuts and fresh fruit businesses of Nabisco Brands; The Los Angeles Times, August 23, 1987, again referring to Del Monte Fresh Fruit, a Nabisco subsidiary and another such reference in The New York Times, February 12, 1986.

Applicant seeks to cast doubt on the Examining Attorney's submission by offering other parts of the November 12, 1986 New York Times article which state that "... Except for a handful of widely known brand names, the nation's produce sections are teeming with fresh fruits and vegetables of uncertain lineage" and indicating that retailers and others are skeptical about new brand names in the produce section because the success of SUNKIST, CHIQUITA and DOLE will be hard to duplicate and that, in addition, "many of the newer brand-name items are meant to be sold in packages" but "consumers generally prefer unpackaged produce...".

While much of what the New York Times article is discussing is prospective, the discussion nevertheless does support the Examining Attorney's position that some produce is currently sold

under brand names, a fact conceded by applicant, and that there is an effort underway to continue and to expand that practice. Applicant does not refute that information but merely argues that some doubts have been raised as to the success of such an effort, points out that the article indicates consumer resistance to packaged produce and that produce markets still feature unmarked goods. None of these arguments changes the ultimate fact that trademarked produce has and increasingly does appear alongside the unmarked species and that information relating to this situation is readily available to consumers. Moreover, the fact that a number of fresh fruits and/or vegetables are currently being marketed by brand name cannot have escaped the attention of even the most casual shopper.

In addition, there is evidence of complementary use. The Examining Attorney has offered additional Lexis/Nexis material to support her position showing that the goods of both parties are served and eaten together and thus are complementary to one another. One such example, an excerpt from an article in The Washington Post, January 21, 1987 provides the information that cookies and fresh fruits are served together as desserts. Complementary use is clearly another factor to be considered and, in fact, the complementary use of crackers, cookies and fresh fruits was a consideration in finding likelihood of confusion in the VISTA case, supra.

Finally, considering that the mark CAPRICE DES DEUX with a crest design is significantly different from registrant's mark, registrant's argument in its application to register CAPRICE, that the use on cheese of CAPRICE DES DEUX is unlikely to cause confusion with its mark used on biscuits, cookies, wafers and candy, does nothing to bolster applicant's argument against likelihood of confusion between the marks and goods in this case.

In view of the foregoing, we conclude that there is sufficient relationship between the goods of applicant and those of registrant such that their sale under these marks is likely to cause confusion as to source. Any doubts which we may have had have been resolved in favor of the registrant. See In re **Pneumatiques, Caoutchouc Manufacture et Plastiques Kleber-Colombes**, 179 USPQ 729 (CCPA 1973).

Accordingly, the refusal to register is affirmed.

J. D. Sams

L. E. Rooney

R. L. Simms
Members, Trademark
Trial and Appeal Board

JUL 20 1988

10