**NINA RICCI, S.A.R.L., Appellant,**

v.

**E.T.F. ENTERPRISES, INC., Appellee.**

**No. 89–1197.**

United States Court of Appeals, Federal Circuit.

Nov. 15, 1989.

K. Bradford Adolphson, Mattern, Ware, Stoltz & Fressola, Fairfield, Conn., argued for appellant. With him on the brief was Robert H. Ware.

Jane Shay Wald, Gottlieb, Rackman & Reisman, New York City, argued for appellee. With her on the brief was James Reisman.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

Nina Ricci, S.A.R.L. (Nina Ricci) appeals from the decision of the Trademark Trial and Appeal Board (Board) of the United States Patent and Trademark Office in Opposition No. 69,977. *Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*, 9 USPQ2d 1061 (TTAB 1988). The Board dismissed the opposition of Nina Ricci to the registration by E.T.F. Enterprises, Inc. (ETF) of the mark VITTORIO RICCI for handbags in Class 18, scarves, neckties, blouses, sweaters, coats, jackets and pants, in Class 25, and retail store services in the areas of shoes, clothing and accessories, in Class 42. We reverse.

I

A. This appeal involves the opposition filed by Nina Ricci against the registration of ETF's mark VITTORIO RICCI, pursuant to Trademark Application Serial No. 73/416,354 filed in 1983, for the goods described above. Nina Ricci also opposes ETF's registration of the VITTORIO RICCI mark for retail store services except in the areas of shoes and belts.

Nina Ricci is a French corporation and couturier house established by the now-deceased dress designer of that name. In the

United States, Nina Ricci first began selling perfume in 1947 and began selling clothing and accessories at least as early as 1962. It is the owner of the registered marks NINA RICCI, SIGNORICCI and CAPRICCI for perfumes, toiletries and cosmetic products. These marks, as well as MADEMOISELLE RICCI, have also been registered for a wide variety of clothing and accessories for women, including fashion gowns, ready-to-wear clothing, coats, handbags, neckwear and jewelry.

For the years between 1981 and 1986, wholesale sales of NINA RICCI fragrance products in this country exceeded $200 million ($350 million at retail), with advertising and sales promotion expenditures aggregating around $37 million. Wholesale sales of NINA RICCI hosiery, sleepwear and lingerie during the same period were about $11 million; sales of women's dresses, skirts, sweaters, blouses, suits and slacks were $3.7 million; and sales of women's coats, raincoats, handbags, evening bags, tote bags, scarves, neckwear and jewelry have been substantial. More than $10 million was spent on advertising of these products on television and in the print media between 1970 and 1980.

Nina Ricci also controls a retail boutique operating under the service mark NINA RICCI in Beverly Hills, California. This store offers a complete line of products including apparel, accessories and perfume under the NINA RICCI mark.

ETF began selling VITTORIO RICCI shoes, belts, handbags and billfolds in 1975. While the name was fictitious when adopted, ETF's president, Todd Finkel, changed his name to Todd Vittorio Ricci in 1977. ETF's principal business has been in retail sales of shoes and belts at its New York City stores. In addition, ETF has sold its shoes through other retail stores (e.g., Saks Fifth Avenue and Neiman Marcus) where Nina Ricci has sold its goods as well. The Board noted from the depositions of ETF's president that, at the time of the Board's hearing, ETF was not selling blouses, sweaters, coats, jackets and pants. It concluded, however, that a prima facie case of abandonment of the VITTORIO

RICCI mark for clothing as a result of non-use for more than two years prior to the filing of the opposition had not been established by Nina Ricci.

B. In a prior proceeding between the same parties, ETF filed an application in 1975 to register the mark VITTORIO RICCI for sweaters, belts, neckties, shoes and women's blouses, which Nina Ricci opposed (No. 58,461). The Board decided in favor of Nina Ricci. *Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*, 203 USPQ 947 (TTAB 1979).

Upon review, however, the district court reversed the decision of the Board and directed the Commissioner of Patents to allow registration of ETF's VITTORIO RICCI trademark for shoes and belts. *E.T.F. Enterprises, Inc. v. Nina Ricci, S.A.R.L.*, 523 F.Supp. 1147, 213 USPQ 517 (S.D.N.Y.1981). "[G]iven the total absence of evidence regarding neckties, sweaters, and women's blouses, the Court decline[d] to direct the Commissioner of Patents to allow registration of the 'Vittorio Ricci' mark for those products." *Id.* at 1156, 213 USPQ at 525.

## II

The only issue presented is whether ETF's VITTORIO RICCI trademark, in relation to the goods and services for which registration is sought, so resembles Nina Ricci's use of its marks NINA RICCI, SIGNORICCI and CAPRICCI for the same or related goods and services as to be likely to cause confusion, mistake or deception. Section 2(d) of the Lanham Act (codified in 15 U.S.C. § 1052(d) (1982)). The Board mistakenly concluded that such likelihood does not exist.

█ The ultimate determination of likelihood of confusion *vel non* is a legal matter, based on the facts properly found, to be decided by this court. *Kimberly–Clark Corp. v. H. Douglas Enterprises*, 774 F.2d 1144, 1146, 227 USPQ 541, 542 (Fed.Cir. 1985); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1569, 218 USPQ 390, 394 (Fed.Cir.1983). In making that determination we must take into ac-

count, when of record, those of the thirteen evidentiary factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973), that are pertinent to the case. *Kimberly–Clark*, 774 F.2d at 1146, 227 USPQ at 542. Different elements may play the dominant role in different cases. *See DuPont*, 476 F.2d at 1361–62, 177 USPQ at 567–68.

Although the Board did not specifically discuss the *DuPont* factors, the Board made certain factual findings that would be pertinent under *DuPont*. The Board found, *inter alia*, (1) that some of the parties' goods are identical or highly related, (2) that applicant's goods were sold primarily in its New York stores, but that they were also sold in some of the same stores where opposer sold its goods, and (3) that opposer has been selling ready-to-wear clothing and accessories with substantial revenues since 1962, and that similar goods were not currently being sold by ETF, although there had been some sales in the past. *Nina Ricci, S.A.R.L.*, 9 USPQ2d at 1065–66. Furthermore, as the Board stated, the district court, in *E.T.F. Enterprises, Inc. v. Nina Ricci, S.A.R.L.*, 523 F.Supp. at 1154, 213 USPQ at 523, specifically found that opposer's mark, NINA RICCI, "is a strong distinctive mark which has 'secondary meaning.'" The board noted that NINA RICCI and VITTORIO RICCI both are concurrently registered for shoes.

In determining that there was no likelihood of confusion, the Board's enunciated reasons were that the marks are "sufficiently different," that there have been no "reported instances of actual confusion," and that the district court had commented that the VITTORIO RICCI mark had been adopted in good faith without intent to capitalize on opposer's marks. We do not agree, after considering all the findings, that the Board's reasons support a conclusion of no likelihood of confusion.

The Board stated that the different first names, VITTORIO and NINA, incorporated into the respective marks have obvious differences in sound, appearance and connotation, although it recognized that the surname, RICCI, is identical. However,

the Board failed to consider the other marks of opposer and their effect on the similarity or dissimilarity of ETF's mark. These marks, MADEMOISELLE RICCI, SIGNORICCI and CAPRICCI, according to Nina Ricci, indicate that the RICCI surname is a unifying name in opposer's marks and is the dominant and significant part of opposer's marks in identifying its goods. *See Burger Chef Sys., Inc. v. Sandwich Chef, Inc.*, 608 F.2d 875, 878, 203 USPQ 733, 735 (CCPA 1979). Indeed, the Board has previously recognized the practice in the fashion industry of referring to surnames alone. *See Nina Ricci, S.A. R.L. v. Haymaker Sports, Inc.*, 134 USPQ 26, 28 (TTAB 1962); *Polo Fashions, Inc. v. La Loren, Inc.*, 224 USPQ 509, 512 (TTAB 1984). Furthermore, the Board accorded little or no importance to the increasing sales in many lines under opposer's marks since the date of the district court decision. *See Kimberly–Clark Corp.*, 774 F.2d at 1146–47, 227 USPQ at 542. As this court said in *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 675, 223 USPQ 1281, 1284 (Fed.Cir.1984) (citations omitted):

> When an opposer's trademark is a strong, famous mark, it can never be "of little consequence". The fame of a trademark may affect the likelihood purchasers will be confused inasmuch as less care may be taken in purchasing a product under a famous name.

These factors argue against according controlling weight to the differences in the marks based solely on the use by the parties of dissimilar first names.

In addition, ETF argued and the Board noted that there have been no reported instances of actual confusion. The absence of any showing of actual confusion is of very little, if any, probative value here because (1) no evidence was presented as to the extent of ETF's use of the VITTORIO RICCI mark on the merchandise in question in prior years, and (2) the Board specifically found that ETF was not selling such merchandise at the time of the opposition proceeding in its own stores or elsewhere.

▮ In reaching its conclusion, the Board acknowledged that it drew some guidance from the district court's opinion concerning ETF's 1975 trademark application. In that case, the court found that no likelihood of confusion existed only with respect to ETF's shoes and belts, products on which the NINA RICCI mark had not been used. *E.T.F. Enterprises, Inc,* 523 F.Supp. at 1155, 213 USPQ at 524.[1] Opposer no longer challenges ETF's rights as to those goods but seeks to preclude a more expanded line of clothing or services being offered under the VITTORIO RICCI mark.

▮ Nina Ricci has shown that NINA RICCI has become an increasingly strong identification of source, that it has been vigilant in protecting its marks from encroachment by others, that NINA RICCI or related marks have been used on the goods and services at issue since well before ETF's limited use of its mark for such goods and services, that the goods of the parties would be sold in some of the same stores, and that overlap of the goods, which did not exist to any significant extent in prior years and does not, in fact, yet exist to any significant extent, would be fostered if ETF were allowed to expand into the field now occupied by Nina Ricci. Further, we see no basis for holding that Nina Ricci has estopped itself from challenging the right of expansion ETF asserts by reason of its registering NINA RICCI for shoes, a mark ETF did not oppose. We therefore conclude that the opposer, Nina Ricci, has met its burden of demonstrating that there exists a likelihood of confusion between its NINA RICCI and related marks and ETF's VITTORIO RICCI mark for the goods and services in question. In reaching this decision, we must reiterate the teaching of our predecessor court that there is "no excuse for even approaching the well-known trademark of a competitor ... and that all doubt as to whether confusion, mistake, or deception is likely is to be resolved against the newcomer, especially where the established mark is one which is famous...." *Planter's Nut & Chocolate Co. v. Crown Nut Co., Inc.,* 305 F.2d 916, 924–25, 134 USPQ 504, 511 (CCPA 1962). *See also Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.,* 748 F.2d at 674, 223 USPQ at 1285. Based on the record before the Board, we must view ETF as the "newcomer" to the clothing and fashion accessories business despite the fact that ETF uses the established VITTORIO RICCI mark in the rather limited area of shoes and belts.

Accordingly, the decision of the Trademark Trial and Appeal Board is reversed.

REVERSED.

---

1. The Board correctly determined that the "prior proceeding does not preclude this litigation under the doctrine of collateral estoppel. That is because the court did not determine the issue of likelihood of confusion with respect to any of applicant's goods or services now before us." *Nina Ricci, S.A.R.L.,* 9 USPQ2d at 1065.